**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| In re: | Case No. 12-30816 |
| Kids View, Inc, | Small Business |
| Debtor. | Chapter 11 |

# KIDS VIEW, INC'S AMENDED DISCLOSURE STATEMENT, DATED 10/31/2012

***Table of Contents***


I. INTRODUCTION ....... 4
A. Purpose of This Document ....... 4
B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ....... 4
1. Time and Place of the Hearing to Confirm the Plan ....... 4
2. Deadline For Voting to Accept or Reject the Plan ....... 5
3. Deadline For Objecting to the Confirmation of the Plan ....... 5
4. Identity of Person to Contact for More Information ....... 5
C. Disclaimer ....... 5
II. BACKGROUND ....... 6
A. Description and History of the Debtor's Business ....... 6
B. Insiders of the Debtor ....... 6
C. Management of the Debtor Before and During the Bankruptcy ....... 6
D. Events Leading to Chapter 11 Filing ....... 7
E. Significant Events During the Bankruptcy Case ....... 7
F. Projected Recovery of Avoidable Transfers ....... 7
G. Claims Objections ....... 7
H. Current and Historical Financial Conditions ....... 7
III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ....... 7

A. What is the Purpose of the Plan of Reorganization? ....... 7
B. Unclassified Claims ....... 8
1. Administrative Expenses ....... 8
2. Priority Tax Claims ....... 8
C. Classes of Claims and Equity Interests ....... 9
1. Classes of Secured Claims ....... 9
2. Classes of Priority Unsecured Claims ....... 12
3. Class of General Unsecured Claims ....... 12
4. Class of Equity Interest Holders ....... 13
D. Means of Implementing the Plan ....... 13
1. Source of Payments ....... 13
2. Post-confirmation Management ....... 14
E. Risk Factors ....... 14
F. Executory Contracts and Unexpired Leases ....... 14
G. Tax Consequences of Plan ....... 14
IV. CONFIRMATION REQUIREMENTS AND PROCEDURES ....... 15
A. Who May Vote or Object ....... 15
1. What Is an Allowed Claim or an Allowed Equity Interest? ....... 16
2. What Is an Impaired Claim or Impaired Equity Interest? ....... 16
3. Who is **Not** Entitled to Vote ....... 16
4. Who Can Vote in More Than One Class ....... 17
1. Votes Necessary for a Class to Accept the Plan ....... 17
2. Treatment of Nonaccepting Classes ....... 17
C. Liquidation Analysis ....... 17
D. Feasibility ....... 17
1. Ability to Initially Fund Plan ....... 18
2. Ability to Make Future Plan Payments and Operate Without Further Reorganization ....... 18
V. EFFECT OF CONFIRMATION OF PLAN ....... 18
A. DISCHARGE OF DEBTOR ....... 18
Discharge ....... 18
B. Modification of Plan ....... 18

C. Final Decree .......... 19

VI. OTHER PLAN PROVISIONS .......... 19

A. Default in Payment of Claims of Unsecured Creditors by Kids View, Inc.: The following terms and conditions shall apply to any default in payment to any holder of an Allowed Unsecured Claim. .......... 19

1. Conditions of Default and Remedies .......... 19

2. Release of Liens .......... 19

## I. INTRODUCTION

This is the amended disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of Kids View, Inc (the "Debtor"). This Amended Disclosure Statement contains information about the Debtor and describes the Debtor's Amended Plan of Reorganization (the "Plan") filed by Kids View, Inc. on October 31, 2012. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed at pages eight through eleven of this Disclosure Statement. General unsecured creditors are classified in Class 5(b) and will receive a distribution of 10% of their allowed claims, to be distributed as follows: 96 equal monthly installments pro-rata to be paid starting the first day of the first full month following the effective date.

### A. Purpose of This Document

This Disclosure Statement describes:

The Debtor and significant events during the bankruptcy case,

How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),

Who can vote on or object to the Plan,What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

Why Kids View, Inc believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

#### *1. Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will take place

on December 13, 2012, at 10:00 a.m. (MT), in Courtroom One at the 8515 Lockheed, Courtroom One, El Paso, Texas, 79912.

2. *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to

Diamond Law
Sidney J. Diamond, Esq
Karla P. Martinez, Esq
3800 N. Mesa St. B-3
El Paso, Texas 79912.

See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by December 3, 2012 or it will not be counted.

3. *Deadline For Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court by Dcember 3, 2012 and served upon:

Diamond Law
Sidney J. Diamond, Esq
Karla P. Martinez, Esq
3800 N. Mesa St. Suite B-3
El Paso, Texas 79912

4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact:

Diamond Law
Sidney J. Diamond, Esq
Karla P. Martinez, Esq
3800 N. Mesa St. Suite B-3
El Paso, Texas 79912

**C. Disclaimer**

***The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.***

***The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.***

## II. BACKGROUND

### A. Description and History of the Debtor's Business

The Debtor is a non-public corporation what was created in 2001. Kids View, Inc. is the managing Corporation for Kids View I, LLC. Kids View I currently has enrolled 150 children and is a licensed 24 hour daycare facility. There are only 4 facilities in El Paso County with a 24 hour license issued. The current revenue for Kids View Inc is being generated from the Rent, Insurance, Property Taxes, IRS fees, Vehicle Lease, and Management fees being charge to Kids View I, LLC.

Kids View 1, LLC has 15 Employees and during winter months it has 25 employees. Kids View Inc. does not have any employees other than Liza Bauman who is the Manager in charge of all accounting and administrative responsibilities for Kids View Inc as well as Kids View I.

Kids View 1 was accepted in a special program selected by Region 19, Texas School Readiness, which prepares children entering school, there were only 6 facilities selected 3 being from ours. This facility also provides childcare for the program Crimes Against Victims, which help Domestic violence Families.

### B. Insiders of the Debtor

Maria Lourdes Torres

### C. Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were:

Maria Lourdes Torres

The Managers of the Debtor during the Debtor's chapter 11 case have been:

Maria Lourdes Torres.

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be:

Maria Lourdes Torres

### D. Events Leading to Chapter 11 Filing

Several of the Kids View Daycares were faced with financial trouble when the economy began to decline. This caused Kids View, Inc. to not be able to meets its obligation. It was discovered in February 2011 that cash was being stolen from cash deposits for many months from Kids View I by a manager the manager was immediately replaced and new management has increased enrollment.

### E. Significant Events During the Bankruptcy Case

Sidney Diamond was employed through the court.

Kids View I, which pays rents to Kids View, Inc., has obtained its license to provide 24 hour care. There are only four facilities that provide this service in El Paso. This will help ensure that Kids View I will continue to keep enrollment up and be able to pay rent to Kids View, Inc.

### F. Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### G. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H. Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit B. The value's are based on the opinion and knowledge of Maria Lourdes Torres, manager of the Debtor.

Exhibit C has been omitted because Debtor does not have financial statements.

The most recent post –petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth Exhibit D.

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims

or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B. Unclassified Claims**

Certain type of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

*1. Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| U.S. Trustee Fees | $975.28 | Any outstanding fees the Debtor owes to the U.S. Trustee for this case will be paid by the Effective Date. |
| Attorney's Fees | $25,000.00 | These fees will be paid in equal monthly installments of $520.83 until paid in full. Based on estimated fees of $25,000, this will take 48 months. To the extent the court approves a different amount, payments may extend over a shorter or longer period. |
| TOTAL | $25,975.28 | |

*2. Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Internal Revenue Service Taxes | $182,766.26 | | The Claim of the Internal Revenue Service in the amount of $182,766.26 will be paid as follows: $182,766.26 shall be paid in 108 equal monthly installments of principal and interest, with interest at the rate of 4% beginning the first day of the first full month following the effective date. For so long as the Debtor is not in default of the installment agreement no attempt will be made to collect such taxes from the Debtor.<br><br>If the Debtor should default, the Internal Revenue Service may pursue any applicable rights and remedies to collect their claim under State or Federal law. If there is default to any provisions to the Internal Revenue Service, the Internal Revenue will send written notice to the Debtor. The Debtor must cure the default within 15 days of the date of the notice. The Debtor can cure one notice of default from the Internal Revenue Service. |
| Texas Workforce Commission Tax Dept. | $ 215.96 | | The Claim of the Texas Workforce Commission shall be paid in full on the first day of the first full month following the effective date. |

## C. Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### *1. Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If

the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Secured claim of Capital Savings Bank in the amount of $50,178.71 | No | Impaired | Capital Bank's claim is an allowed secured claim. Capital Bank shall retain its liens. Capital Bank is oversecured. The claim will be paid in full, and Capital Bank is entitled to recover post-petition interest and attorney's fees. The balance due as of the first day of the first full month following the Effective Date shall be amortized on the basis of a 30-year amortization schedule; shall bear interest at the rate of 6.50% per annum beginning the first day of the first full month following the Effective Date; and shall be subject to a 10-year call or balloon in favor of Capital Bank. All adequate protection payments made by the Debtor prior to the Effective Date shall be credited against the balance due, first to post-petition attorney's fees and expenses incurred by Capital Bank, then to late fees, then to interest, and finally to principal. Any guaranties of the loans by Capital Bank to the Debtor shall be unaffected by this Plan. Upon request, the Debtor shall execute any renewal and extension |

| | | | | |
|---|---|---|---|---|
| | | | | documents deemed necessary or advisable by Capital Bank, and any reasonable legal fees for preparation of such renewal and extension documents may be charged to the loan balance. |
| 2 | Secured claim of Capital Savings Bank in the amount of $426,117.73. | No | Impaired | Capital Bank's claim is an allowed secured claim. Capital Bank shall retain its liens. Capital Bank is oversecured. The claim will be paid in full, and Capital Bank is entitled to recover post-petition interest and attorney's fees. The balance due as of the first day of the first full month following the Effective Date shall be amortized on the basis of a 30-year amortization schedule; shall bear interest at the rate of 6.50% per annum beginning the first day of the first full month following the Effective Date; and shall be subject to a 10-year call or balloon in favor of Capital Bank. All adequate protection payments made by the Debtor prior to the Effective Date shall be credited against the balance due, first to post-petition attorney's fees and expenses incurred by Capital Bank, then to late fees, then to interest, and finally to principal. Any guaranties of the loans by Capital Bank to the Debtor shall be unaffected by this Plan. Upon request, the Debtor shall execute |

| | | | | |
|---|---|---|---|---|
| | | | | any renewal and extension documents deemed necessary or advisable by Capital Bank, and any reasonable legal fees for preparation of such renewal and extension documents may be charged to the loan balance. |
| 3 | Secured claim of City of El Paso in the amount of $252,058.02 | No | Impaired | The amount of this claim will increase because it accrues interest at the rate of 12% from filing date through the effective. Paid in 60 equal monthly installments with interest at the rate of 12%. |
| 4 | Secured claim of Hyundai Motor Finance in the amount of $5,659.47. | No | Impaired | Terms of contract will be adopted; however, the interest will decrease to 4.00%. |

2. *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept a different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|

3. *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 5 which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 5(a) | Administrative Convenience Class for Unsecured Creditors holding allowed claims of less than $976.00 or creditors holding allowed claims | Impaired | This class consists of Unsecured Creditors holding allowed unsecured claims of less than $976.00. These claims will be paid |

| | | | |
|---|---|---|---|
| | in Class 5(b) who elect to reduce their claim to $976.00 and be paid pursuant to Class 5(a). | | in full on the first day of the first full month following the effective date. |
| 5(b) | General Unsecured Class[1] | Impaired | This class will receive 10% of their allowed claims. The amount totaling $ 92,331.54will be paid towards this class. This amount will be paid in 96 equal monthly installments pro-rata beginning on the first day of the first full month following the effective date. |

4. *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 6 | Retained Property Interest | Unimpaired | Debtor will retain its interest in all property of the estate. |

**D. Means of Implementing the Plan**

1. *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

The future income of the Debtor coming from the rents collected from Kids View I. Based on the attached financial statement from Kids View #1, the income provided to Kids View Inc is sufficient to support the Projected Income reported on the Kids View Inc Projected

[1] This includes the claim of CIT Small Business in the amount of $146,313.39. The collateral attached to said claim will be surrendered and the claim shall be treated under Class 6(b) as a general unsecured claim. Also included in Class 6(b) will be the claim of Cemex, in the amount of $13,329.33, since the alleged judgment was obtained after the date of filing. This class also included the Unsecured General Claim of the IRS in the amount of $71,074.48. A full list of creditors in this class is included in Exhibit "G".

Statement of Cash Flow, $14,995.[2]

2. *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| Maria Lourdes Torres | President | Yes | Manager | **$0.00**[3] |

**E. Risk Factors**

The proposed Plan has the following risks:

The economic crisis may pose a problem for the debtors to realize their obligations under the plan.

**F. Executory Contracts and Unexpired Leases**

The Plan, in Exhibit 6.01, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Exhibit 6.01 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 6.01 will be rejected under the Plan. Consult your advisor or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**G. Tax Consequences of Plan**

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their***

---

[2] See Attached Exhibit "G" which includes projections for Kids View I.

[3] Ms. Torres has not received and will not receive compensation from Kids View, Inc.

***Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following are the anticipated tax consequences of the Plan: It is not practical nor is it intended by this general discussion to present herein a detailed explanation of the Federal Income Tax aspects of this Plan. In addition, although the following discussion is based upon the relevant provisions of the Internal Revenue Code of 1954, as amended (the "Code"), regulations promulgated by the Internal Revenue Service pursuant to the Code ("Regulations") the Bankruptcy Tax Act of 1986 (as amended), the Revenue Reconciliation Act of 1993, the Economic Growth and Tax Reconciliation Act of 2001, the Jobs and Growth Tax Relief Reconciliation Act of 2003 and judicial administrative interpretations thereof presently in effect, in some cases the proper interpretation of such authority or their application to particular factual situations is unclear. Moreover, each Creditor is cautioned that this discussion is based in part on the provision of the Tax Reform Acts of 1984, 1986, 1993, 2001 and 2003 which have been enacted into law, and as to which, there are, to date, varying judicial or administrative interpretations. As a result of the foregoing, under current law, there is substantial uncertainty surrounding many of the tax consequences applicable to the various payments to be made under this Plan . Additionally, Creditors are further advised that no ruling has been requested or obtained from the Internal Revenue Service (the "IRS") nor has an opinion of counsel been obtained by the Debtors with respect to the tax aspect of this Plan. For all of the foregoing reasons and because the Federal Income Tax consequences of this Plan will depend in part upon certain factual matters.

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes 1,2,3,4,5 and 6 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that class 7 is unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was September 11, 2012***

2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

holders of claims and equity interests that have been disallowed by an order of the Court;

holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

holders of claims or equity interests in unimpaired classes;

holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

holders of claims or equity interest in classes that do not receive or retain any value under the Plan;

administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.***

### *4. Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

## B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2].

### *1. Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### *2. Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

## C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

## D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the

liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

*1. Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibit F.

*2. Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit G.[4]

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual cash flow, after paying operating expenses and post-confirmation taxes, of $177,564.00. The final Plan payment is expected to be paid on 2021.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V. EFFECT OF CONFIRMATION OF PLAN

### A. DISCHARGE OF DEBTOR

*Discharge.* On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B. Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

---

[4] Also included as a part of Exhibit "G" are the financials for Kids View I which is the operating entity. Kids View I is the operating corporation which will be paying rent to Kids View, Inc. for use of the properties and vehicles that are owned by Kids View I.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

**C. Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI. OTHER PLAN PROVISIONS

**A. Default in Payment of Claims of Unsecured Creditors by Kids View, Inc.**: The following terms and conditions shall apply to any default in payment to any holder of an Allowed Unsecured Claim.

*1. Conditions of Default and Remedies*

A failure by the Debtor to make payment pursuant to terms of the Confirmed plan shall be an event of default. The Debtor shall have fifteen (15) days from receipt of notice by certified mail from a Claimant in which such default has occurred to cure the default. If the default is not cured within fifteen (15) days period, the Claimant may (a) accelerate the Allowed Claims in such class to be immediately due and owing and/or (b) pursue any and all available state and federal rights and remedies. The debtor is permitted to cure a default in any class only three (3) times.

B. **Default in Payment of Claims of Secured Creditors by Kids View, Inc.**: The terms and conditions of the loan documents are herewith adopted in full except as otherwise stated in this Plan and the Debtor's Disclosure Statement.

C. **Terms and Conditions Relating to Secured Creditors:** Classes 1,2,3 and 4 consist of the Secured Claims of all Secured Creditors, except those Creditors whose collateral has been abandoned to them, or for which an order for relief from the provisions of Sections 362 of the Code has been granted as finally allowed and ordered paid by the Court, and to the extent that such Claims are not greater than the value of the Debtor's assets which the Court finds are valid security for such Claims. The following terms and conditions apply to all Creditors holding Liens against Property of the Estate:

1. *Preserved Liens*

Liens of Secured Creditors shall be preserved to the extent such liens are valid.

2. *Release of Liens*

Upon payment in full to the Secured Creditors under the terms of this Plan, such Secured Creditors shall execute the documents necessary to release their Liens securing such property.

DATED: October 31,2012

Kids View, Inc.,
By: /s/ Maria Lourdes Torres
Maria Lourdes Torres its President

Respectfully submitted,

**DIAMOND LAW**,

/s/ Sidney J. Diamond
By: Sidney J. Diamond
Attorney for Debtor
Texas Bar Card No.: 5803000
3800 N. Mesa, Suite B-3
El Paso, Texas 79902
(915) 532-3327 Voice
(915) 532-3355 Fax
sidney@sidneydiamond.com